T.C. Memo. 2010-279


UNITED STATES TAX COURT


JOHN MORGAN SANDERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3395-09.                    Filed December 20, 2010.


John Morgan Sanders, pro se.

<u>Edwin B. Cleverdon</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


THORNTON, <u>Judge</u>:  Respondent determined a $2,300 deficiency in petitioner's 2006 Federal income tax.  The issue for decision is whether a $7,175 constructive distribution from the termination of petitioner's life insurance policy is taxable income to him.  All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule

references are to the Tax Court Rules of Practice and Procedure. Figures have been rounded to the nearest dollar.

FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate by this reference. When he petitioned the Court, petitioner resided in Alabama.

In 1979 petitioner purchased from New York Life Insurance Co. (New York Life) a whole life insurance policy with a $25,000 face amount (the policy). From 1979 until March 2006 petitioner paid premiums of about $31 per month on the policy. The policy allowed petitioner to borrow generally up to the policy's cash value, using the policy as security. Interest on policy loans accrued at 8 percent, with any accrued but unpaid interest added to the loan and bearing interest at the same rate. By its terms the policy terminated if any unpaid loan, including accrued interest, exceeded the sum of the policy's cash value and any dividend accumulations.

Between 1990 and 2004 petitioner borrowed $7,136 against the policy. Insofar as he recalls, he used the proceeds for personal purposes. He did not repay these loans.

By letter dated February 9, 2006, New York Life advised petitioner that his outstanding policy loan balance, including principal and accrued interest, was $17,203, that this amount exceeded by $517 the policy's cash value, and that the policy

would be canceled unless petitioner paid at least $517 within 30 days. By letter dated March 10, 2006, New York Life advised petitioner that it had terminated the policy. Petitioner received no cash or property from New York Life upon the policy termination.

On Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for taxable year 2006, New York Life reported a gross distribution to petitioner of $17,292, with a "Taxable amount" of $7,175 after taking into account petitioner's $10,117 of insurance premiums paid. On his 2006 Federal income tax return petitioner reported no income with respect to the policy's termination. Respondent determined that petitioner improperly omitted the $7,175 of taxable income shown on the Form 1099-R.

OPINION

As a general matter, the taxpayer bears the burden of showing that the Commissioner's determination is in error. Rule 142(a).[1] As an exception to this general rule, if a taxpayer who has fully cooperated with the Commissioner raises a reasonable dispute with respect to an information return, the Commissioner may have the burden to produce reasonable and probative evidence to verify the information return. Sec. 6201(d).

---

[1]Petitioner does not contend and the record does not suggest that the burden of proof as to any factual issue should shift to respondent pursuant to sec. 7491(a).

Petitioner testified that he disagrees with the taxable amount shown on the Form 1099-R because he "just did the math basically in my head" and he thinks New York Life's "mathematics are way off."[2] These vague contentions do not rise to the level of a "reasonable dispute" so as to impose any burden of production on respondent pursuant to section 6201(d). In any event, stipulated documentation of petitioner's premium and loan history with New York Life corroborates the information reported on the Form 1099-R.

Petitioner seems to suggest that he had no outstanding loans against the policy but instead merely made "draws" against it before 2006. Pursuant to the policy's terms, however, the distributions that New York Life made to him before 2006, as well as capitalized interest on these amounts, were bona fide loans, collateralized by the policy's value. See Atwood v. Commissioner, T.C. Memo. 1999-61.

Petitioner's fundamental contention, as we understand it, is that he cannot be taxed on any "distribution" from New York Life in 2006 because he received no cash or other property from New York Life that year. Petitioner is mistaken.

_____

[2]Although he has stipulated that New York Life issued the Form 1099-R, petitioner contends that he did not receive it because New York Life mailed it to the wrong address. The record is inconclusive on this point, which in any event is immaterial to our analysis.

An amount received in connection with a life insurance contract which is not received as an annuity generally constitutes gross income to the extent that the amount received exceeds the investment in the insurance contract.[3]  Sec. 72(e)(1)(A), (5)(A), (C).  When it terminated petitioner's policy, New York Life applied the policy's cash value to the outstanding balance on the policy loans.[4]  That action was the economic equivalent of New York Life's paying petitioner the policy proceeds, including untaxed inside buildup, and his using those proceeds to pay off his policy loans.  This constructive distribution is gross income to petitioner insofar as it exceeds his investment in the contract.  See McGowen v. Commissioner, T.C. Memo. 2009-285; Atwood v. Commissioner, supra; Dean v. Commissioner, T.C. Memo. 1993-226.  The evidence indicates that petitioner's investment in the contract was, as New York Life reported, $10,117.  Consequently, as respondent determined,

---

[3]The investment in the contract is defined generally as the aggregate amount of premiums or other consideration paid for the contract less aggregate amounts previously received under the contract, to the extent they were excludable from gross income. Sec. 72(e)(6).

[4]Apparently, when the policy was terminated, its cash value was about $600 less than the balance of petitioner's policy loans.  The parties have not raised, and consequently we do not consider, any issue as to whether a corresponding part of the gross income that petitioner realized upon the termination of the policy should be characterized as income from discharge of indebtedness.  In any event, on the facts before us, it would not appear that such a characterization would affect petitioner's tax liability.

$7,175 of the $17,292 constructive distribution was taxable income to petitioner.

To reflect the foregoing,

Decision will be entered

for respondent.